## Cowen v. Kuich

*I. Louis Rubin,* for plaintiff.

*Arthur M. Eastburn,* for defendant.

BOYER, J., August 5, 1940.—This was an action of trespass brought by plaintiff to recover damages from defendant for alleged malicious prosecution, in that the defendant had plaintiff arrested upon a charge of larceny, from which prosecution he was discharged after hearing by the

justice of the peace. At the close of plaintiff's case the court, on motion of defendant's counsel, entered a compulsory nonsuit on the ground that plaintiff had failed to prove want of probable cause. This is a motion to take off said nonsuit.

Briefly, the facts upon which the prosecution was brought are as follows: Defendant had a contract with the Department of Highways of the Commonwealth of Pennsylvania for the erection of a State highway bridge over a creek in Bristol Township, this county, to replace an old bridge which was to be removed by defendant. By the terms of the written contract the Commonwealth reserved title to certain iron taken from the old bridge, namely, I-beams and channel irons constituting the floor work of the bridge. Defendant sublet to Bailis & Sons, a Philadelphia firm, the contract to remove the old bridge, reserving the iron which had been reserved by the State. Bailis & Sons demolished the bridge and sold certain of the iron to plaintiff. Plaintiff was repeatedly informed as to which iron had been reserved by the State, and had been warned very emphatically by defendant and defendant's foreman not to remove any of the iron reserved, it being commingled with a large quantity of other iron which was not reserved. Plaintiff, notwithstanding these warnings, defied defendant and on a Sunday morning in the absence of defendant moved the iron, including channel irons, to his private property. Early the following day, he loaded all the iron, including one or two tons of channel iron, and proceeded to haul it away to the State of New Jersey. Thereupon, defendant secured a warrant charging plaintiff with the larceny of the channel iron and had him arrested.

In addition to the above facts relating to the alleged larceny, the proceedings as to the arrest, hearing, and discharge of defendant are peculiar. The offense alleged to have been committed took place in Bristol Township, Bucks County. The justice of the peace admittedly is, and for many years has been, a justice of the peace elected in

and commissioned for Bristol Township, this county. The so-called information upon which the warrant was issued was drawn by some peace officer in Bristol Borough and there signed by this defendant. The justice of the peace in Bristol Township, which adjoins Bristol Borough, was notified and came to the borough police station where he was shown the information which had been prepared and signed there. According to plaintiff's evidence, the justice did not have the prosecutor swear to the information, but merely asked him whether that was his signature. Plaintiff replying in the affirmative, the justice issued a warrant and delivered it to a constable of Bristol Borough. Defendant was arrested under said warrant and brought before the justice of the peace at the municipal building in the Borough of Bristol who forthwith proceeded to hold a hearing there without any consent obtained from defendant in the prosecution. After hearing a witness, the justice continued the hearing to a later date. The continued hearing was also held at the municipal building in the Borough of Bristol. Apparently a settlement of the case was informally arrived at, although this does not very clearly appear, and defendant was thereupon discharged ostensibly on the ground of insufficient evidence.

We have carefully read all the testimony, covering 150 pages, taken at the trial of this case. A reading of this testimony confirms the opinion expressed by the trial judge, and upon which the nonsuit was entered, that it does not show want of probable cause for the prosecution. In view of the conclusions we have reached on another branch of the case, it is not necessary to discuss the testimony. In our opinion defendant, according to the evidence, had every reason to believe that plaintiff, when he took the iron in question, knew that his vendor did not have title to it and that consequently he himself had no right to take it, but that he was determined to take it regardless of right, title, or law. The mere fact that he openly *asserted* a right to it did not give him immunity from arrest for taking that which he apparently knew did

not belong to him. It is not a novel occurrence for a buyer of junk in bulk to take everything within easy reach under a pretense of purchase. Under all the facts in the case this defendant had every reason to believe that this was such a case and that plaintiff was not honest in taking the iron in question, and, therefore, had reasonable cause to bring the prosecution. We do not express any opinion as to whether plaintiff was actually guilty of the charge. That is not involved here. The real question is whether defendant had reason to believe him guilty. We are convinced that he had such reason.

While the foregoing was the reason on which the granting of the nonsuit was based, we believe that there was another and even more conclusive reason for entering the same. Among the elements necessary to show a malicious prosecution are: (*a*) The commencement of a criminal judicial proceeding; (*b*) its legal causation by the present defendant against the present plaintiff; and (*c*) its bona fide termination in favor of the present plaintiff: 38 C. J. 386. It appears from the evidence adduced by plaintiff, particularly that of the justice of the peace called by him, that no legal criminal prosecution was ever instituted in this case. The justice of the peace left not only his office, but the township for which he was elected and commissioned as a justice of the peace, and in a foreign jurisdiction accepted a signed paper purporting to be a criminal information and issued a warrant thereon. Neither he nor any other person swore the informer as to the truth of the charge contained in the information. Upon this so-called information he issued a warrant and delivered it to an officer in the Borough of Bristol to be served. Defendant was arrested and brought before the justice in the Borough of Bristol, where he conducted two hearings and discharged defendant.

In our opinion, under a long line of decisions in this State covering more than a century, this proceeding was illegal and void: King v. King et al., Admrs., 1 P. & W. 15 (1829) ; Share et al. v. Anderson et al., Execs., 7 S. & R.

43, 62; Murdy v. McCutcheon et ux., 95 Pa. 435; Novick Co. v. Buck, 1 Schuyl. Leg. Rec. 76; Morrison v. Stuart, 6 Luz. L. R. 89; Wright v. Millar, 1 Lack. Leg. News 346; Commonwealth v. Durham, 8 Del. Co. 335; Godfrey v. Linegerger et al., 18 Pa. C. C. 408; Commonwealth ex rel. v. Brower, 20 Pa. C. C. 405; Bedford Monumental Works v. Dewee, 23 Pa. C. C. 489; Swain v. Brady, 19 Pa. Superior Ct. 459; Commonwealth v. Moore, 15 D. & C. 263. Furthermore, since no legal prosecution was instituted against the present plaintiff, it follows that there could be no favorable termination within the meaning of the law.

The office of the justice of the peace is of ancient origin and was established in this country as part of the English judicial system under the common law. It was later continued in most of the States by provisions in their several constitutions. Under these constitutions, and particularly that of the State of Pennsylvania, the justice of the peace was a township officer. For a history of the office of justice of the peace see 16 R. C. L. 330, sec 2. Our Constitution of 1874 provided in art. V, sec. 11, for their election "in the several wards, districts, boroughs or townships", and limited their number to two for each township, ward, district, or borough. The constitutional provisions were further supplemented by acts of assembly. The Act of February 22, 1802, 3 Sm. L. 490, 42 PS §171, provides that no justice of the peace shall act as such unless he shall reside within the district for which he was commissioned. The Act of June 21, 1839, P. L. 376, sec. 13, 42 PS §172, provides that justices of the peace "during their continuance in office, shall respectively keep their offices in the ward, borough or township, for which they shall have been elected." Practically all the cases above cited quote either, or both, of these acts as a basis for their conclusion that the jurisdiction of justices of the peace is limited to official acts performed within the geographical boundaries of the respective townships, wards, etc., for which they were elected and commissioned. There

are exceptions to the rule noted in a number of the above cases, namely, in civil actions, in which all the parties interested have agreed to the same or have waived them by taking an appeal instead of certiorari. We have been unable to find any case in which this exception was extended to criminal prosecutions or any official act relating to the same.

The earliest declaration of our Supreme Court on this subject was in the case of King v. King et al., Admrs., 1 P. & W. 15, decided in 1829. In that case the court, by Chief Justice Gibson, said (p. 19) :

"A court is defined to be a *place* where justice is judicially administered; and a justice of the peace, being a judicial officer, must necessarily have his court or place of administering justice. That the matter has been so regarded by the legislature, is clear from the act of assembly by which he is forbidden to keep his 'stated office' in a tavern. It is difficult to conceive of the office of a judge, without at the same time, associating with it the idea of a place for the performance of its duties. The judgment was, however, actually rendered at the justice's office. But were the parties before him there? That is not pretended; but, it is said, the confession of the defendant was received when they were actually before him. That brings the argument back to the point from which it started, the receiving of the confession being as much a judicial act as the recording of it. But it is said the justice acted under a previous authority. It has been determined, however, that a warrant of attorney, which is quite as operative as a parol authority, is altogether insufficient. The act of assembly which gives him a qualified jurisdiction, *requires the parties to be before him;* and the abuses that might otherwise be practised, are sufficiently obvious to require him to be held to the letter of his authority."

This portion of the opinion has been frequently quoted in subsequent cases and the principle has never been overruled either directly or by implication. In Murdy v. Mc-

Cutcheon et ux., 95 Pa. 435, 437, the court, in recognizing this principle, said:

"A justice of the peace is a judicial officer. He holds a court. That is, a place where justice is judicially administered. To that place the defendant should have been summoned to appear: King *v.* King et al., 1 P. & W. 15."

In the case of Commonwealth ex rel. v. Brower, 20 Pa. C. C. 405, the same question was raised on a writ of habeas corpus sued out for the discharge of a prisoner committed to jail for trial on a charge of rape. The justice was commissioned for Mahanoy Township in Schuylkill County. He had an office in that township which he called his "regular" office and an additional office in the Borough of Mahanoy City, which he designated as his "consulting" office. It appeared upon the hearing upon the writ that the justice "took the information and issued the warrant" at 325 West Center Street in said borough and that he held the hearing at 320 West Center Street, namely, at said "consulting" office, at which place the commitment was also made out and issued. In that case, as in this, all the proceedings were had outside of the township of the justice's jurisdiction. The court, citing and relying upon many of the above cases and acts of assembly, discharged defendant on the ground that the proceedings were void and a nullity.

In Swain v. Brady, supra, the Superior Court recognized this same principle in a civil suit, but held that, inasmuch as defendant raised this question for the first time upon appeal instead of taking a writ of certiorari, he had waived the irregularity.

This was a criminal prosecution and, therefore, the requirements of the law as to conducting all the proceedings at the office of the justice of the peace and within his territorial jurisdiction should have been strictly complied with. The great danger of abuse and oppression under any other rule is too obvious for comment. The fact that Bristol Borough adjoins Bristol Township and that the municipal building therein was only a mile and a half

from the office of the justice of the peace is immaterial. If a justice can be allowed to hold his court in another jurisdiction a mile and a half from his office, then he would have an equal right to hold his court 5, 10, or 20 miles from his district. If in this case the justice could take an information, issue a warrant, have defendant arrested and brought before him and give him hearing in Bristol Borough, a mile and a half from his office, then he could with equal propriety have done the same in Riegelsville Borough in this county, 40 miles from his office. No rule or practice as to jurisdiction in a criminal case which is fraught with such manifest danger can be recognized or tolerated in the law. We conclude, therefore, that the entire proceeding before the justice of the peace was void ab initio and a nullity.

Assuming the above conclusions to be correct, the next question arising is as to its effect upon this civil action for malicious prosecution. We find no Pennsylvania decision involving these precise facts. But the general principle as laid down in 38 C. J. 387, §6, that the foundation for malicious prosecution "is an original proceeding, judicial in character", and that if the proceeding is extrajudicial the action must be for a direct trespass, is recognized and supported by Pennsylvania Supreme Court decisions: Maher et ux. v. Ashmead et al., 30 Pa. 344; Baird v. Householder, 32 Pa. 168; Kramer et al. v. Lott et al., 50 Pa. 495; Stewart v. Thompson, 51 Pa. 158.

The first case above cited was an action on the case for malicious prosecution. Plaintiff had been arrested for a supposed crime not known to the law. The court held that trespass on the case was not the proper form of action, saying (p. 346):

"The arrest was not an abuse of lawful process. It was an act committed under a void and irregular writ. Every step was unlawful. The seizure of the person was an act of direct violence."

In Baird v. Householder, supra, the action was on the case for malicious prosecution. The arrest was made for a

supposed crime which was nothing but a simple trespass not cognizable in the quarter sessions. The court, in holding that an action for malicious prosecution would not lie, said (p. 169) :

"As respects a criminal prosecution, therefore, the information and process were not only irregular, but void on the face of them, and all concerned in the arrest were, in law, trespassers."

The court held that "the only action sustainable by him is trespass, and not case." It further held that an amendment at trial by adding a count for a "malicious arrest on a criminal warrant" did not cure the error as to the form of action.

The last two cases above discussed were recognized and followed in Kramer et al. v. Lott et al., supra, in which the general principle is thus summarized (p. 496) :

"Where the proceedings are entirely irregular, the prosecutor, according to all the authorities, will be a trespasser, and the action to redress the injury must be trespass for the force applied; and such is the case where the proceedings are in form a criminal prosecution, but the offense charged is not within criminal jurisdiction. This is definitely ruled in Maher and wife v. Ashmead, 6 Casey 344, and in Baird v. Householder, 8 Id. 168. The principle of the rule is that the warrant is void, no crime existing to give it legality, and that an arrest under it is no more to be justified than any other illegal arrest and detention without warrant. Trespass in such a case is undoubtedly the remedy."

In Stewart v. Thompson, supra, this principle was recognized but held not to apply to the peculiar facts of that case. This principle is recognized in practically all other jurisdictions of the United States: 38 C. J. 387, notes 72, 73.

In all the above cases the principle was applied at a time when the law recognized the distinction between actions of trespass and trespass on the case. While this distinction has been abolished, the law now requires the facts upon

which plaintiff relies for a judgment to be pleaded in detail. Plaintiff has set forth all the facts essential to sustain an action for malicious prosecution, pleading an original prosecution, legal and judicial in character, want of probable cause, and a favorable termination of the prosecution. In order to sustain a verdict under the evidence it would have been necessary for plaintiff to have pleaded, or amended his statement so as to show, a trespass by false arrest, assault and battery, false imprisonment, etc., through void process. It is not necessary to decide whether such amendment could have been legally allowed; because the fact remains that it was not asked for and under the present pleadings and evidence a verdict could not have been sustained. For both of the foregoing reasons the motion to take off the nonsuit must be refused.

Now, August 5, 1940, the motion to take off the nonsuit is overruled and a new trial refused.